UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ABDAL AZZIZ HAMMAD, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:06-CV-822 RM |
| | ) | (Arising out of 3:04-CR-108(01)RM) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

OPINION and ORDER

Abdal Hammad pleaded guilty in June 2005 to conspiracy to commit wire fraud in violation of 18 U.S.C. § 371, as charged in Count 9 of the indictment. He was sentenced on September 21, 2005 to a three-year term of probation, which included six months of home detention, and ordered to pay restitution in the amount of $30,000.00 and a special assessment of $100.00. Three remaining counts against Mr. Hammad were dismissed at the time of sentencing.

Mr. Hammad is now before the court asking that his sentence be vacated pursuant to 28 U.S.C. § 2255. Mr. Hammad claims that at his change of plea hearing, at his sentencing, and during the period of his probation, he believed that by pleading guilty he "might" be deported when, in fact, 8 U.S.C. § 1227(a)(2)(A)(iii) provides that any alien convicted of an aggravated felony "is deportable."[1] Mr. Hammad maintains the "misinformation" he received about his deportation

---

[1] 8 U.S.C. § 1101(a)(43)(M)(i) defines an "aggravated felony" as an offense involving fraud or deceit where the loss to the victim exceeds $10,000; Mr. Hammad pleaded guilty to a fraud that resulted in a loss to the victim in excess of $30,000.

possibilities rendered his plea involuntary and also claims his counsel was ineffective in negotiating the plea agreement in violation of his rights under the Sixth Amendment to the United States Constitution.

The one-year limitation period applicable to motions filed pursuant to 28 U.S.C. § 2255 runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Judgment was entered in this action on September 21, 2005, and no appeal was taken. Mr. Hammad's conviction became final on October 1, 2005, when the ten-day period for filing a notice of appeal expired, so to be timely his petition would have had to have been filed by October 2, 2006 (October 1, 2006 was a Sunday). Mr. Hammad's petition was filed on December 18, 2006.

Mr. Hammad asserts his petition is timely under option (4) because he didn't learn the facts giving rise to his claims until September 6, 2006 when deportation proceedings were initiated against him. Mr. Hammad says until September 2006, he was under the mistaken belief that deportation was a discretionary proceeding. According to Mr. Hammad, because he only became

2

aware that deportation was mandatory on September 6, 2006 when he received a notice of removal, equitable tolling is justified, making his § 2255 petition timely.

The court can't agree with Mr. Hammad that his petition is timely. Mr. Hammad received his notice of removal on September 6, 2006, a date that afforded him time to file a timely § 2255 petition. "Equitable tolling is granted sparingly, where extraordinary circumstances beyond the litigant's control prevented timely filing." Robinson v. United States, 416 F.3d 645, 651 n.1 (7th Cir. 2005). Mr. Hammad's circumstances aren't so extraordinary and weren't sufficiently beyond his control so as to justify equitable tolling in this case. Even if Mr. Hammad's petition had been timely, though, his claims wouldn't entitle him to the relief he seeks.

Mr. Hammad's petition contains a number of claims. He contends his plea was involuntary because the court misrepresented his deportation possibilities and counsel didn't correct the court's error, he wasn't informed that by pleading guilty he would face deportation, and counsel didn't advise him in May 2006 that he wouldn't be able to return to the United States after traveling outside the country. Mr. Hammad also argues that his plea should be vacated based on his claim of ineffective assistance of counsel in negotiating the plea agreement. Mr. Hammad complains that his counsel didn't bargain for a sentence reduction under U.S.S.G. § 5K1 and didn't secure an agreement that included "a sentence that equals two thirds of the low-end of the applicable guidelines range, or the mandatory minimum sentence, which ever is greater." Memo., at 11.

3

Mr. Hammad seeks to have his sentence vacated pursuant to 28 U.S.C. § 2255, but nowhere in his petition does he address his promise in his plea agreement to not contest his conviction or sentence in a § 2255 proceeding. The plea agreement, signed by Mr. Hammad, his attorney James Korpal, and Assistant United States Attorney Kenneth M. Hays, contains the following language in paragraph 9(d):

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed; I also understand that no one can predict the precise sentence that will be imposed, and that the court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s) as set forth in this plea agreement; with this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction and my sentence and any restitution order imposed or the manner in which my conviction or my sentence or the restitution order was determined or imposed, to any court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section 3742, or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

A waiver of the right to file a petition under § 2255 is enforceable within limits. Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000). Such a waiver can be collaterally attacked in a limited number of circumstances, including challenges based upon contractual grounds such a mutual mistake or breach, United States v. Cook, 406 F.3d 485, 487 (7th Cir. 2005), or when a defendant claims "he entered his guilty plea without knowing or understanding the terms thereof [or] he claims ineffective assistance in connection with the

4

negotiation of the waiver." Mason v. United States, 211 F.3d at 1068; *see also* Jones v. United States, 167 F.3d 1142, 1144-1146 (7th Cir. 1999) ("[W]aivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver."). Mr. Hammad claims he didn't understand the terms of his plea agreement and his counsel was ineffective in negotiating his plea.

INVOLUNTARINESS OF PLEA AGREEMENT

Mr. Hammad claims his plea was rendered involuntary because the court gave him "misinformation" about his possibility of being deported. The following exchange occurred at Mr. Hammad's June 23, 2005 change of plea hearing:

> THE COURT: Now, I think I heard you say you had grown up in Palestine. Are you a citizen of the United States?
>
> MR. HAMMAD THROUGH INTERPRETER: No. I applied for citizenship. Now, I just have a green card.
>
> THE COURT: Okay. Do you understand, sir, that this conviction would result in a felony conviction against you that might – and it would be up to somebody else – result in your being deported from the United States? Do you understand that?
>
> MR. HAMMAD THROUGH INTERPRETER: Yes, I understand.

Plea Hrg. Tr., at 20. Mr. Hammad says that although the court had no obligation to inform him about deportation, once the court "incorrectly advised him that he 'might' be deported," the court and/or his counsel had an obligation to provide him with accurate information. Mr. Hammad insists that the "inaccurate

5

misrepresentation by the court lead [him] to believe that his plea would not result in mandatory deportation, and thus constitutes a constitutional violation providing sufficient grounds to vacate the plea." Memo., at 9.

Mr. Hammad relies on case law from courts in the Second Circuit to support his position, but controlling case law in this circuit is to the contrary. In concluding that possible deportation consequences of a guilty plea are "collateral aspects of the prosecution," the court in Santos v. Kolb, 880 F.2d 941 (7th Cir. 1989), held that

> If the consequence flowing from the plea is "collateral," then the defendant need not be informed of it before entering the plea. Since the doctrine provides a test for determining the voluntary and intelligent character of the plea, it is applied both to the trial court – as a measure of its performance in establishing the voluntary and intelligent character of the plea before accepting it – and to defense counsel – as a measure of his performance in providing a defendant with the information necessary to render the plea voluntary and intelligent.

880 F.2d at 944. Thus, the court had no obligation to inform Mr. Hammad of the collateral consequences, i.e., deportation possibilities, of his guilty plea. Santos v. Kolb, 880 F.2d at 944.

Mr. Hammad asserts the court gave him incorrect information about his deportation possibilities. The information conveyed to Mr. Hammad – that the decision about whether he would be deported would be made by someone other than the sentencing judge – was neither incorrect nor inaccurate. *See, e.g.,* Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 484 n.8 (1999) (noting that while the Illegal Immigration Reform and Immigrant Responsibility Act

6

of 1996 "apparently rescinded" the ability of the Immigration and Naturalization Service to grant certain discretionary relief in deportation proceedings, "there is no indication that the INS has ceased making this sort of determination on a case-by-case basis"); Broomes v. Ashcroft, 358 F.3d 1251, 1256 (10th Cir. 2004) ("[T]he Antiterrorism and Effective Death Penalty Act of 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 did not alter the collateral nature of deportation to a criminal proceeding. A consequence is collateral if it "remains beyond the control and responsibility of the district court in which that conviction was entered." (*quoting* United States v. Gonzalez, 202 F.3d 20, 27 (1st Cir. 2000)); El-Nobani v. United States, 287 F.3d 417, 421 (6th Cir. 2002) ("it is clear that deportation is not within the control and responsibility of the district court"). Mr. Hammad's claim that his plea was involuntary based on the court's provision of inaccurate information is without merit.

Mr. Hammad also claims his plea was rendered involuntary because he received ineffective assistance of counsel. To prevail, Mr. Hammad must "first show that his attorney performed in a deficient manner, Strickland [v. Washington, 466 U.S. 668, 687 (1984)], and then prove that 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' Hill [v. Lockhart, 474 U.S. 52, 58-59 (1985)." Mr. Hammad hasn't carried his burden of establishing either prong.

Mr. Hammad says he received ineffective assistance because counsel didn't inform him of the deportation consequences of his guilty plea, but the court

7

examined and rejected such a claim in Santos v. Kolb, 880 F.2d 941 (7th Cir. 1989). The Santos court concluded that counsel's failure to inform a defendant of the immigration consequences of a guilty plea, "however unfortunate [as] it might be, simply does not deprive [the defendant] of the effective assistance of counsel guaranteed by the Constitution." 880 F.2d at 945. *See also* Broomes v. Ashcroft, 358 F.3d 1251, 1257 (10th Cir. 2004) ("deportation remains a collateral consequence of a criminal conviction, and counsel's failure to advise a criminal defendant of its possibility does not result in a Sixth Amendment deprivation"); United States v. Gonzalez, 202 F.3d 20, 25 (1st Cir. 2000) ("Along with numerous other courts of appeals, we have held that deportation is only a collateral concomitant to criminal conviction. Counsel's failure to advise a defendant of a collateral consequence is a legally insufficient ground for a plea withdrawal."); United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988) ("[A]n attorney's failure to advise a client that deportation may result from a conviction does not constitute ineffective assistance of counsel."). Mr. Hammad hasn't alleged or argued that his counsel affirmatively misrepresented the deportation consequences of his guilty plea, *see, e.g.*, United States v. Kwan, 407 F.3d 1005, 1015 (9th Cir. 2005) (where counsel misled defendant about the immigration consequences of a conviction, court found counsel's performance to be "objectively unreasonable under contemporary standards for attorney competence"); United States v. Couto, 311 F.3d 179, 183 (2d Cir. 2002) (concluding that counsel's "affirmative misrepresentation" was objectively unreasonable where, in responding to

8

defendant's inquiry, counsel assured defendant that while deportation was a possibility, "there were many things that could be done to prevent her from being deported"); <u>United States v. Jimenez</u>, No. 05C1161, 2005 WL 1503123, *5 n.1 (N.D. Ill. Jun. 24, 2005) ("Were Jimenez contending that her lawyers had affirmatively misled her regarding the deportation issue, she might have a viable claim."), and his claim that he received ineffective assistance because counsel didn't inform him of the deportation consequences of his guilty plea is without merit.

     Mr. Hammad also summarily concludes that had counsel advised him of the deportation consequences of his plea "he would never had entered into the plea agreement and would have insisted on entering a plea on a different count or going to trial." Memo., at 13. First, Mr. Hammad hasn't explained how entering a guilty plea to a different count or counts would have changed his circumstances: he was charged in Count 6 with wire fraud involving loss to the victim of $13,596, in Count 7 with wire fraud involving loss to the victim of $13,330, and in Count 8 with wire fraud involving loss to the victim of $12,006. The "is deportable" provision of 8 U.S.C. § 1227(a)(2)(A)(iii) applies to fraud offenses involving a loss to the victim in excess of $10,000; all charges in the indictment against Mr. Hammad involve a loss in excess of $10,000. While Mr. Hammad claims that "a diligent good-faith effort to determine the applicable facts and through available discovery would have demonstrated that Mr. Hammad should not have plead guilty to count nine, but one (or even all) of the lesser counts, six, seven, or eight,"

9

Memo., at 12, his unsupported assertion in this regard is insufficient to justify a withdrawal of his plea. *See* Hardamon v. United States, 319 F.3d 943, 951 (7th Cir. 2003) (a claim of failure to investigate requires the movant to provide the court with "sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced"). Lastly, Mr. Hammad concludes that had he been advised that deportation was definite, he would have gone to trial [*see* Memo., at 12, 13], but his "sole assertion that he would have proceeded to trial cannot carry the burden to show prejudice under Strickland," Berkey v. United States, 318 F.3d 768, 773 (7th Cir. 2003). Because Mr. Hammad hasn't carried his burden of establishing "through objective evidence a reasonable probability that, but for counsel's advice, he would not have accepted the plea," McCleese v. United States, 75 F.3d 1174, 1179 (7th Cir. 1996), he can't prevail on his claim that his plea was involuntary based on ineffective assistance of counsel.

A plea is knowing and voluntary if the defendant is informed of direct, not collateral, consequences of the plea. Dalton v. Battaglia, 402 F.3d 729, 733 (7th Cir. 2005). Mr. Hammad stated at his change of plea hearing that the plea agreement had been translated into Arabic and read to him before he signed it, Plea Hrg. Tr., at 6; he had discussed the plea agreement with his counsel, Plea Hrg.Tr., at 6; he understood the charges against him and what the government would have to prove in order for him to be guilty, Plea Hrg. Tr., at 9; he understood the terms of his agreement with the government, including the waiver of his right to file an appeal and a § 2255 petition, Plea Hrg. Tr., at 14-19; and no

10

one had used any force or made any threats against him to get him to plead guilty, Plea Hrg. Tr., at 19-20. He admitted the facts charged in the indictment, Plea Hrg. Tr., at 9-14. Mr. Hammad's statements at his change of plea hearing, statements made under oath, are presumed to be truthful when determining whether his plea was voluntary. Bridgeman v. United States, 229 F.3d 589, 592 (7th Cir. 2000). Although Mr. Hammad says his plea agreement wasn't entered into voluntarily, the record compels a finding that Mr. Hammad's guilty plea was "a voluntary and intelligent choice among the alternate courses of actions open to him." Berkey v. United States, 318 F.3d 768, 773 (7th Cir. 2003) (*quoting* North Carolina v. Alford, 400 U.S. 25, 31 (1970)). Mr. Hammad hasn't established his entitlement under § 2255 to the vacation of his conviction based on his claim that his plea was involuntary.

INEFFECTIVE ASSISTANCE OF COUNSEL – NEGOTIATION OF PLEA AGREEMENT

Mr. Hammad's remaining claims are based on his complaints that his counsel provided ineffective assistance because counsel didn't negotiate for a sentence reduction under U.S.S.G. § 5K1 and didn't secure an agreement that included "a sentence that equals two thirds of the low-end of the applicable guidelines range, or the mandatory minimum sentence, which ever is greater." Memo., at 11. Mr. Hammad's claims are couched in terms of "ineffective assistance of counsel," when, in fact, the claims relate directly to the length of Mr. Hammad's sentence. As already discussed, Mr. Hammad agreed to waive his right

11

to challenge his conviction and sentence, and the manner in which the conviction and sentence was determined or imposed, to any court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directed to this waiver or its negotiation. Plea Agree., ¶ 9(d). Mr. Hammad hasn't alleged that his counsel was ineffective in negotiating the waiver, nor has he argued that the waiver was the product of coercion or that his sentence exceeds the statutory maximum or was based on some constitutionally impermissible factor. *See* United States v. Sines, 303 F.3d 793, 798 (7th Cir. 2002) (discussing instances where a waiver doesn't foreclose review). Mr. Hammad says his sentence was made too long by actions of his counsel with which he disagrees. Mr. Hammad, then, is challenging his sentence and the manner in which it was determined, an option he surrendered as part of joint concessions made in his plea agreement. Mr. Hammad has waived his right to present those arguments. *See* United States v. Joiner, 183 F.3d 635, 645 (7th Cir. 1999) ("the garden-variety attacks on his sentence [the defendant] wants to raise, in the guise of a claim of ineffective assistance of counsel, are exactly the short of claims he knowingly and intelligently waived his right to present").

## CONCLUSION

Based on the foregoing, the court DENIES Mr. Hammad's petition filed pursuant to 28 U.S.C. § 2255 (filed December 18, 2006).

SO ORDERED.

ENTERED:  January 19, 2007

 /s/ Robert L. Miller, Jr. 
Chief Judge
United States District Court

13